## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 03 2016, 10:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Andrew J. Sickmann
Boston Bever Klinge
Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of H.L. (Minor Child), | October 3, 2016 |
| C.L. (Mother) and L.F. (Father), | Court of Appeals Case No. 89A01-1604-JT-911 |
| *Appellants-Respondents,* | Appeal from the Wayne Superior Court |
| v. | The Honorable Darrin M. Dolehanty, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 89D03-1511-JT-40 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] C.L. (Mother) and L.F. (Father) appeal the trial court's order terminating their parent-child relationship with their child, H.L. (Child). Mother and Father argue that there is insufficient evidence supporting the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born on July 3, 2014, and had opiates in her system at the time of her birth. Mother later admitted using heroin throughout her pregnancy. Father was incarcerated at that time. The Department of Child Services (DCS) became involved with the family based on concerns of Mother's drug use. Mother agreed to participate in a program of Informal Adjustment, but the program was unsuccessful because Mother continued to test positive for heroin as well as cocaine and marijuana.

[3] On October 24, 2014, the trial court authorized the removal of Child from Mother's care and custody because of Mother's ongoing substance abuse and Father's incarceration. Additionally, DCS alleged that Mother had left the infant in a residence where a known heroin user resides. On October 31, 2014, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS) based on Mother's substance abuse and Father's incarceration. The same day, both parents admitted to the allegations in an amended CHINS petition[1] and Child was adjudicated a CHINS. Also at that hearing, the trial

---

[1] The amended CHINS petition was not admitted into evidence.

court found Mother in contempt for continuing to use illegal drugs and sentenced her to ninety days imprisonment. Father was released from incarceration on November 17, 2014.

[4] The trial court issued a dispositional decree on November 25, 2014, ordering both parents to do the following: submit to random drug screens; complete a substance abuse assessment and comply with all recommendations; attend all scheduled visits with Child; and maintain a stable source of income. Father was ordered to participate in the Engaging Fathers program and Mother was ordered to complete inpatient substance abuse treatment. Additionally, the trial court authorized Mother's release from jail so that she could begin inpatient substance abuse treatment.

## Mother

[5] Mother successfully completed inpatient substance abuse treatment, but she tested positive for methamphetamine just one week later. DCS referred Mother to a substance abuse counselor, but Mother participated infrequently and inconsistently, and when she did participate she was often dishonest. That provider stopped working with Mother in July 2015 because of Mother's failure to progress.

[6] On February 6, 2015, the trial court again found Mother in contempt for failing to appear at a hearing and sentenced her to thirty days in jail. She was released in March 2015.

Mother was participating with homebased case management between July 2014 and September 2015. She was supposed to attend once a week, but after Child was removed in October 2014, Mother's participation became inconsistent. As of the July 6, 2015, CHINS review hearing, Mother had not attended a case management session since she was released from incarceration on March 28, 2015. Mother was unsuccessfully discharged from this service because of noncompliance and incarceration.

Mother's homebased case manager also supervised her visits with Child. Mother did not consistently attend her scheduled visits and sometimes appeared to be under the influence when she attended. At the time of the termination hearing, Mother's last visit with Child had occurred on August 25, 2015.

Mother was arrested on July 7, 2015, and charged with Level 6 felony theft, Level 6 felony possession of a legend drug, and class A misdemeanor possession of paraphernalia; on July 14, 2015, she was charged with class A misdemeanor conversion in a separate cause. On July 29, 2015, Mother pleaded guilty to conversion and was sentenced to four days in jail. She was released on August 5, 2015.

In August 2015, DCS referred Mother to an intensive outpatient treatment program, but Mother never completed the required substance abuse assessment and that referral was closed.

On September 17, 2015, Mother was arrested, and on October 9, 2015, she was charged with ten counts of Level 6 felony fraud. In December 2015, while

incarcerated, Mother completed a substance abuse assessment, indicating that she used methamphetamine, heroin, marijuana, and opiate pain pills. She had last used illicit substances before she was arrested in September 2015. Mother has participated with substance abuse counseling while incarcerated; her counselor has recommended that Mother again complete inpatient substance abuse treatment once she is released.

[12] On February 9, 2016, Mother pleaded guilty to Level 6 felony theft and one count of Level 6 felony fraud. She was sentenced to one year for each of the two convictions, to be served consecutively. At the time of the termination hearing, Mother was still incarcerated, with an earliest possible release date of May 15, 2016.

[13] During the underlying CHINS case, Mother lived at three different residences, in addition to the five times she was incarcerated. At the time of the termination hearing, she had not met her goals of going back to school, securing housing, or finding employment. Mother's only income occurred during the program of Informal Adjustment and consisted of food stamps and Temporary Assistance for Needy Families. Both income sources discontinued after Child's removal in October 2014, and Mother has not had any income since that time.

# Father

[14] Father attended only two visits with Child; both visits took place in December 2014. He failed to attend a third visit in December 2014 and had no visits after

that time because he failed to maintain contact with DCS during the period of time he was not incarcerated.

[15] On April 7, 2015, Father was arrested on a charge of Level 6 felony possession of methamphetamine. He eventually pleaded guilty as charged and was sentenced to one year of incarceration. At the time of the termination hearing, his earliest possible release date was September 2, 2016, at which time he will be on parole for a minimum of six months. While incarcerated, he has participated in the Engaging Fathers and Thinking for a Change programs and has obtained his GED. He was enrolled in a substance abuse program but stopped attending because he did not receive a reduction in his sentence for participating.

[16] DCS filed a petition to terminate the parent-child relationship between both parents and Child on November 20, 2015. Following a February 24, 2016, factfinding hearing, the trial court entered an order terminating the parent-child relationship. In pertinent part, the trial court found and concluded as follows:

> B.    There is clear and convincing evidence to establish a *reasonable probability* that the conditions that led to the child's removal from her home, and the reasons for her placement outside of that home, will not be remedied. [Child] was born with opiates in her system, due to Mother's ongoing use of illegal drugs while pregnant. . . . Mother continued to test positive for illegal drug use. . . . Mother completed a three-week inpatient substance abuse treatment program on December 22, 2014. By December 29, 2014, Mother had already relapsed . . . . Since that time, Mother disappeared for a couple of months, and then was incarcerated for another month. . . . Mother was

incarcerated various times in July and August, 2015. She has remained incarcerated since mid-September, 2015. The child was removed from Mother's care due to Mother's longstanding and continuing substance abuse. Despite inpatient and outpatient substance abuse treatment, Mother continued to prioritize drugs over her infant child. Since July, 2015, Mother has committed and been convicted and sentenced for Criminal Conversion, Theft, and Fraud.

Father was incarcerated when [Child] was born, and other than two visits with her in December, 2014, has had no relationship with her. Father has been incarcerated for most of [Child's] life. He has only even visited with her for a few hours since she was born. . . . Father has no job and no home, and it is not reasonable to conclude that he would be able to immediately provide for [Child's] needs upon his release from incarceration.

The law does not require, and the Court *does not* conclude, that there is absolutely no chance that the parents might someday be able to overcome or remedy the reasons why [Child] was removed from her home, and why she has remained removed from her home since a few weeks after her birth. Nonetheless, the Court *does* conclude that there is clear and convincing evidence of a *reasonable probability* that the reasons for removal and ongoing placement will not be remedied.

C.     There is clear and convincing evidence to conclude that termination of the parent-child relationship is in this child's best interest. This child has lived the vast majority of her life in the absence of her biological parents. She has spent very little time with her mother, due to Mother's repeated abuse of illegal drugs as well as repeated, and ongoing, periods of incarceration. She has spent virtually no time with her father, due to Father's initial incarceration, abandonment of the child for several months, and then return to incarceration. There is an absence of reason to conclude that [Child] recognizes either parent as a parent. In

stark contrast, for nearly 85% of her life, [Child] has lived with a suitable adoptive family. Her needs are provided. She is comfortable, smart, and advancing as would be expected of a normal child in a safe environment.

Appellants' App. p. 92-93 (emphases original). Mother and Father now appeal.

# Discussion and Decision

## I. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[18]     Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A)     that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C)  that termination is in the best interests of the child; and

> (D)  that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II.  Mother

Mother argues that there is insufficient evidence supporting the trial court's termination order.  Specifically, she argues that there is insufficient evidence establishing that (1) there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside the home of the parents will not be remedied;[2] and (2) termination is in Child's best interests.

In considering Mother's first argument, we note that we must evaluate the initial conditions leading to the child's removal as well as the reasons the child continues to be placed outside the home.  *In re A.I.*, 825 N.E.2d 798, 806 (Ind.

---

[2] Mother and Father both make much of the fact that they admitted to the allegations in an amended CHINS petition and the amended petition is not in the record.  They contend that because we do not know the reasons for the CHINS adjudication, DCS has failed to prove its case under this prong of the statute.  But the statute focuses on the reasons for the child's *removal*, not the reasons for the CHINS adjudication.  Therefore, this argument is unavailing.

Ct. App. 2005). In this case, Child was originally removed from Mother's care and custody primarily because of Mother's ongoing substance abuse. Child has continued to be placed outside of Mother's care and custody because of continuing concerns about substance abuse, repeated incarcerations, and Mother's failure to complete court-ordered services.

[21] In finding that DCS had met its burden of proving this prong of the statute, the trial court found the following relevant facts:

- Child was born with opiates in her system. Mother admitted to regular use of heroin while pregnant.
- Mother continued to test positive for illegal drug use during the program of Informal Adjustment. She was incarcerated as a result.
- After her release from incarceration, she successfully completed inpatient substance abuse treatment. She relapsed one week later.
- Since that time, Mother lost contact with DCS and the trial court for two months and was incarcerated several other times, amassing three convictions during the CHINS and termination proceedings.
- Mother was not participating consistently with court-ordered services, including her visits with Child. The visitation supervisor believed that Mother was under the influence during multiple visits.
- At the time the termination order was issued in February 2016, Mother had remained incarcerated since September 2015.
- Mother participated in a substance abuse assessment during the most recent incarceration. That assessment recommended another round of inpatient substance abuse treatment upon her release.
- Mother has no source of income and no residence.

[22] In short, Mother had multiple opportunities over the course of nearly two years to ameliorate her substance abuse issues and improve her parenting and life skills. Her repeated failures to remain sober, live a law-abiding life, and comply

with court-ordered services readily support the trial court's conclusion that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in Child's removal and continued placement outside of Mother's care and custody will not be remedied. We decline to reverse on this basis.

[23] Next, Mother argues that the trial court erred by finding that termination is in Child's best interests. Again, we note that throughout the nearly two years of the CHINS and termination cases, Mother continued to abuse illegal drugs, commit crimes, and refrain from appropriate participation in court-ordered services. She also failed to participate regularly in her visits with Child, and when she did attend, the visitation supervisor was often concerned that Mother was under the influence. Child is placed in a loving and appropriate preadoptive home where she is thriving. Under these circumstances, the trial court did not err by finding that DCS proved by clear and convincing evidence that termination is in Child's best interests.

## III. Father

[24] Father raises the same arguments: DCS failed to prove by clear and convincing evidence that (1) there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside the home of the parents will not be remedied; and (2) termination is in Child's best interests.

[25] Turning to the first argument, we note that the reason resulting in Child's initial removal from Father's care and custody was Father's incarceration. The

reasons for Child's continued placement outside of Father's care and custody include Father's failure to attend all visits with Child, failure to keep in touch with DCS or the trial court when not incarcerated, and new incarceration and conviction for possession of methamphetamine. In support of its conclusion that DCS met its burden of proving this statutory element, the trial court found the following facts:

- Father has been incarcerated for most of Child's life. He was incarcerated when she was born, and again became incarcerated during the CHINS case after he possessed methamphetamine.
- Father has only met Child on two occasions in her entire life.
- Father has no job and no home.

We acknowledge that Father has participated in multiple programs while incarcerated. But that, in and of itself, does not establish a reasonable probability that the conditions that led to Child's removal will be remedied. To the contrary, *after* Child was born, Father committed a new criminal offense, leading to yet another incarceration. Moreover, Father was released between November 2015 and April 2016. He attended only two visits in December 2015 and did not see Child again even though he was free to do so. Additionally, during the time he was not incarcerated, he did not remain in touch with DCS or the trial court and did not participate in court-ordered services. Under these circumstances, we find that the trial court did not err by concluding that DCS proved by clear and convincing evidence that there is not a reasonable probability that the reasons leading to Child's removal from Father's care and custody will be remedied.

Finally, Father argues that the trial court erred by determining that termination is in Child's best interests. The trial court noted that Child has spent virtually no time with Father as the result of his repeated incarcerations and his abandonment of Child when released. Indeed, Father is a stranger to Child. But she has spent the majority of her life with a loving and supportive preadoptive family. Given these facts, we find that the trial court did not err by concluding that DCS proved by clear and convincing evidence that termination is in Child's best interests.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.